

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 16, 1949

Hon. Bascom Giles, Commissioner
General Land Office
Austin, Texas

Opinion No. V-777

Re: Status of non-extended pro-
ducing leases on State land
as affected by Article 5344c,
V. C. S. (Acts 1947, 50th Leg.,
Ch. 82, p. 139) and related
questions.

Dear Sir:

We have your request for an opinion, composed
of three questions, concerning the above-mentioned sub-
ject.

Your question No. 1 reads as follows:

"What will be the status of non-extend-
ed leases which may be found productive dur-
ing the primary term and subsequent to Octo-
ber 1, 1948? Shall the 25 year term be con-
sidered binding, or shall the School Land
Board have within its authority the ability
to grant lease extensions at any later date,
on the basis of value established after pro-
duction has been encountered?"

You are advised that non-extended leases will
terminate after twenty-five (25) years from the date of
the lease. The School Land Board is without authority
to grant lease extensions on applications filed after
September 30, 1948. Article 5344c, V. C. S.

Your question No. 2 reads as follows:

"What methods of disposition will be
available to the present or future School

Land Boards with regard to the title of
non-extended producing leases which may
be found to have appreciable reserves up-
on termination of the 25 year period?
Even with the best geological and engi-
neering estimates certain producing leases
may indicate insufficient reserves to have
producing lives greater than 25 years.
With possible discoveries of new produc-
ing formations the application of more ef-
ficient methods of recovery, or with changes
in crude prices and demand, these leases may
have reserves greater than those presently
anticipated, and also extended operating
lives."

The method of disposition available to pre-
sent or future School Land Boards with reference to
State lands formerly leased under terminated non-extend-
ed leases will depend upon the pertinent leasing sta-
tutes in effect at the time of the expiration of the
twenty-five (25) year term. The present leasing Act
is Article 5421c, V. C. S. (Acts 1931, 42nd Leg., p.452;
as amended, Acts 1939, 46th Leg. p. 465; as amended,
1941, 47th Leg., p. 596; as amended, Acts 1943, 48th
Leg. p. 453).

Your question No. 3 reads as follows:

"It is anticipated that certain non-
extended producing leases will be capable
of additional production after the 25 year
term, provided that large capital expendi-
tures are not required to produce or to re-
develop the property. It is possible that
the present law can be interpreted to mean
that upon termination of the 25 year period
the lease reverts to the State and the opera-
tor is entitled to salvage all surface and sub-
surface equipment. If the operator plugs and
abandons any or all wells upon said lease,
it is quite possible that the remaining re-
serve would be unprofitable should redrilling
be required. Since we are interested in main-
taining a profitable reserve, it will be nec-
essary to establish the right of the State to
assume title to the hole and its salvagable

casing. Without this right an appre-
ciable reserve could be lost by the aban-
donment of a nonextended producing lease."

Mr. Dennis Wallace of the General Land Of-
fice and this writer made a survey for a twenty year
period of several of the leases now on file, and it
is our conclusion that the leases are silent as to
the disposition of casing in the ground.

You are advised that the view of the Texas
Courts is that casing placed in a well can be removed
by the lessee. These cases are based on the reason-
ing that it is personal property or a trade fixture of
the lessee. Southwestern Oil & Gas Co. v. Kimball Oil
and Development Co., 224 S. W. 1111 (Civ. App. 1920);
Moore v. Carey Bros. Oil Co., 269 S. W. 75 (Comm. App.
1925); Orfic Gasoline Production Co. v. Herring, 273
S. W. 944 (Civ. App. 1925); Hubert v. Collard, 141 S.W.
(2d) 677 (Civ. App. 1940, W. E. dism'd, Judg. Corr.);
Armstrong v. Federal Supply Co., 17 S. W. (2) 170 (Civ.
App. 1929); Brazos Conservation & Reclamation District
v. Adkisson, 173 S. W. (2d) 294 (Civ. App. 1943, W.E.
Ref.); Guffey v. Stroud, 16 S. W. (2d) 528 (Comm. App.
1929); Meers v. Frick-Reid Supply Corp., 127 S. W. (2d)
493 (Civ. App. 1939, W. E. dism'd, Judg. corr.) and In
Re Midland Oil Co., 2 Fed. (2) 112 (Fifth Cir., 1924);
Summers, Oil and Gas, Perm. ed., Vol. 3, Sec. 526, p.
214 and 19 Tex. Law Review 95.

The view of Texas is the view of other states.
39 A. L. R. 1225. Practically all the cases involved
standard oil and gas leases with a clause giving the
lessee the right to remove machinery and casing on aban-
donment or termination of lease. However, the rule is
that a lessee can, within a reasonable time after aban-
donment or termination, remove machinery and casing even
though the lease contract does not specifically give him
this privilege. Southwestern Oil & Gas Co. v. Kimball
Oil & Development Co., supra; In Re Midland Oil Co., supra;
Moore, et al v. Carey Bros. Oil Co., supra; Thornton's
Law of Oil & Gas, 3rd Ed., Vol. 2, p. 904, Sec. 653.

The courts, unhesitatingly, apply the rule that
the lessee can remove casing from a dry hole. They have,
however, in the few cases on the subject, issued injunc-
tions restraining the lessee from removing casing from a
producer. Orfic Gasoline Case, supra; Southwestern Oil

& Gas Co. case, supra; and Wisconsin-Texas Oil Co. v. Clutter, 258 S. W. 265 (Rev. on other grounds by Comm. App. 268 S. W. 921).

Restraining the removal of casing from a producing well is consistent with Railroad Commission rules for prevention of waste. Art. 6005, V. C. S., Railroad Comm. Oil & Gas Rule #9b and 10, and Art. 6014(c), V. C. S. See also 31-A Texas Jurisprudence, Sec. 216, which says:

"The right to remove casing from an unproductive hole does not, of course, give the lessee any right to destroy a productive well by taking away the casing, for such action would involve a violation of the oil and gas conservation laws."

It should be noted that the question of removing casing from a producer is applicable only as between lessor-lessee. The rights of mortgagees of casing may involve a different conclusion. Crabb v. Keystone Pipe & Supply Co., 177 S. W. (2d) 989 (Civ. App., 1944, W. E. ref.).

As a safeguard in future leases which might terminate for other reasons while wells are still productive, you might wish to consider insertion of a clause which would provide that casing and other equipment necessary to maintain production shall not be removed.

## SUMMARY

Under the provisions of Art. 5344c (Acts 1947, 50th Leg., Ch. 82, p. 139), the School Land Board is without authority to extend leases on State land on applications filed after September 30, 1948.

School Land Board will dispose of State lands which revert to State upon termination of non-extended leases according to terms of leasing statute in effect at time of expiration of the lease.

Unless otherwise provided by contract, casing in a well is personal property or a trade fixture of the lessee, and can be removed by him; however, the courts will not permit the removal of casing from a producing well in violation of the oil and gas conservation laws.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          J. E. Weeks, Jr.
            Assistant

JEW:bt


APPROVED

Price Daniel
ATTORNEY GENERAL